OPINION
This matter presents a timely appeal from a decision rendered by the Belmont County Common Pleas Court, Juvenile Division, granting the motion requesting modification of temporary commitment to permanent commitment filed by appellee, Belmont County Department of Human Services, Children Services Division.
Vonda Larson Beal, the mother of the dependent minor child in this action, Andrea Larson (born February 7, 1990), voluntarily placed Andrea in appellee's custody in November of 1994 and again on May 23, 1995. The trial court granted temporary custody of the minor child to appellee on July 21, 1995. Thereafter, the trial court granted appellee extensions of the temporary commitment.
On April 17, 1997, appellee filed a motion requesting modification of temporary commitment to permanent commitment. On April 22, 1997, the minor child's natural father, Tim Larson, who was then divorced from Vonda Larson Beal, executed a voluntary, permanent surrender in favor of appellee. During the hearing before the trial court on appellee's motion, testimony was heard from the following parties: Vonda Larson Beal, the natural mother of the minor child; Charles Beal, the step-father of the minor child; Karen Holmes, the caseworker for appellee in this matter; Roseanne Falcone, the guardian ad litem for the minor child; Bea Hart Thomas, the program manager of intensive outpatient care for Crossroads Counseling Services; Pat Dittoe, a parent educator and trainer for appellee; Beverly Van Fossen, an adult caseworker for Community Mental Health Services; and, Anita Exley, Ph.D., a clinical psychologist for Community Mental Health Care.
After due consideration of the testimony offered, the trial court filed its decision on July 21, 1997, stating:
 "The Court finds by clear and convincing evidence that the mother has failed continuously and repeatedly for a period of six (6) months or more to substantially remedy the conditions which caused the child to initially be placed outside the home, despite reasonable case planning and diligent efforts by the agency to assist the mother in remedying these problems, and considering the mother's utilization of services and resources.
 "The Court further finds that the child cannot be placed with either parent and should not be placed with either parent, and that granting permanent commitment to the agency is in the best interest of the child.
 "Wherefore, the child is placed in the Permanent Custody of the Department of Human Services, Children Services Division.
 "The Court further finds that continuation in the child's own home would be contrary to the child's welfare and that the Court hereby determines that reasonable efforts have been made to prevent or eliminate the need for removal of said child from the child's own home and that continued residence of the child in the home would be contrary to the best interests and welfare and that the child's placement is in the most family-like and least restrictive setting available and in close proximity to the parent's home consistent with the best interests and special needs of the child." (Decision filed July 21, 1997, 7-8).
It is from this judgment that the natural mother of the minor child, Vonda Larson Beal (hereafter referred to as appellant) brings the within appeal.
Appellant sets forth three assignments of error on appeal.
Appellant's first assignment of error alleges:
 "THE COURT ERRED IN FINDING THE AGENCY MADE REASONABLE EFFORTS TO MAKE IT POSSIBLE FOR THE CHILD TO RETURN HOME."
Appellant alleges that appellee failed to provide her with an adequate opportunity to fulfill the case plan objectives with regards to the minor child in question. Appellant points to several examples of alleged deficient efforts made by appellee to reunify her with the minor child.
Appellant claims that appellee contributed to the stresses of her separation from the minor child when it failed to allow visitation for many weeks without explanation. Appellant also submits that as a result of appellee's failure to provide Community Mental Health Services with a case plan, she stopped attending therapy sessions.
Appellant concedes that she did not complete her parenting classes as required, but maintains that she received no information from appellee regarding how to make up the three remaining class sessions necessary to complete this case plan objective. Appellant further argues appellee was aware that her current housing situation was temporary due to no fault of her own and that she would soon be residing in an appropriate residence. Appellant complains that she was unable to complete her requirement to attend family counseling since the minor child was placed in foster care in Tuscarawas County and just one counseling session was scheduled, which she attended.
R.C. 2151.419 states:
 "(A) At any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from his home or continues the removal of a child from his home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from his home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from his home, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from his home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make the reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts.
 "(B) The court shall issue written finding of facts setting forth its determination under division (A) of this section. In its written finding of facts, the court shall briefly describe the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."
Permanent custody of a child may not be granted to a human services agency on the grounds that such child cannot be placed with either parent within a reasonable time or should not be so placed, unless a trial court finds by clear and convincing evidence that one or more of the conditions enumerated in R.C.2151.414(E) exist. In re William S. (1996), 75 Ohio St.3d 95. Clear and convincing evidence is more than a mere preponderance of the evidence and requires a petitioner to prove each allegation clearly and convincingly, producing in the mind of the trier-of-fact a firm belief or conviction as to the fact's sought to be established. In re Brown (1994), 98 Ohio App.3d 337. On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear and convincing standard.In re Wise (1994), 96 Ohio App.3d 619. This court has previously stated that the issue is not whether appellee could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. (See In the Matter of Brewer (Feb. 12, 1996), Belmont App. No. 94-B-28, unreported; In the Matter ofHoneycutt (Mar. 6, 1998), Belmont App. No. 95-BA-48, unreported).
The record indicates that appellee established and implemented a case plan pursuant to R.C. 2151.412 which required that appellant: (1) maintain a clean and stable residence; (2) participate in family counseling with regards to the minor child's severe behavior problems; (3) attend counseling at Community Mental Health and follow all recommendations of counselors and case managers; (4) work cooperatively with agency homemaker; (5) accept referral to drug and alcohol counseling for assessment and recommendations; and (6) complete parenting classes.
Testimony was heard before the trial court from several professionals who worked with appellant to meet her case plan objectives. Bea Hart Thomas, appellant's certified addiction counselor, testified that appellant was referred to her in 1995 with a diagnosis of alcohol and cannabis dependency. Ms. Thomas stated that she first saw appellant on November 8, 1995 and thereafter, on seven occasions from January 29, 1996 to May 29, 1996. At that time, appellant did not show up for her scheduled appointments or place a telephone call to explain her absence and, her case was then closed on August 5, 1996. Ms. Thomas explained that appellant's case was reopened on September 5, 1996 as part of the case plan requirement and appellant appeared on six occasions between October 22, 1996 and April 16, 1997. Thereafter, appellant failed to appear for her scheduled appointment on May 14, 1997 and failed to respond to a letter of interest.
Ms. Thomas further testified that appellant voluntarily provided a urine sample on March 6, 1997, which tested positive for a low level of cannabis. Ms. Thomas stated that on March 6, 1997, she noticed that appellant no longer seemed to care about her appearance and was primarily concerned with maintaining her relationship with her current husband, Charles Beal. Ms. Thomas reported that appellant continued to need drug and alcohol counseling and that she had not released appellant from treatment.
Pat Dittoe, a parenting educator and trainer in charge of appellee's parenting classes, testified that appellant participated in the parenting classes but missed more than the allowable number of sessions and did not complete a post-test as required. Mr. Dittoe indicated that he did not receive any additional referral from a caseworker for appellant to finish the three missed sessions.
Beverly Van Fossen, appellant's adult caseworker from Community Mental Health Services, testified that she had been working with appellant for in excess of three years. Ms. Van Fossen admitted that appellant had several case managers in the past, but indicated that since Karen Holmes took over, there was more continuity between appellee and the referral agencies. Ms. Van Fossen indicated that appellant had mental health issues, including depression and that she was not consistent with counseling. By way of further explanation, Ms. Van Fossen stated that appellant ceased her counseling sessions at Women's Tri-County Help Center for abusive issues and intermittently ceased her counseling sessions at Community Mental Health Services.
Ms. Van Fossen testified that although she attempted on several occasions to assist appellant in locating appropriate housing, appellant moved approximately six times within the past three years. Ms. Van Fossen informed the court that appellant was currently living in an unfinished basement which had water leakage, no bathroom and was not an appropriate environment for a young child. Ms. Van Fossen stated that she had visited appellant's residence on three or four occasions and the poor living condition remained consistent.
Ms. Van Fossen further testified that she had been appellant's payee for social security disability benefits and was attempting to assist appellant with budgeting to enable her to manage her own funds. In the Spring of 1997, appellant stole a book of checks from Ms. Van Fossen and wrote checks in excess of the funds available by the sum of $1,500.00.
Ms. Van Fossen also testified that her initial observations of appellant with the minor child were good, however, since appellant's marriage to Charles Beal, she noticed a change in appellant. Ms. Van Fossen related occasions where appellant was screaming in the minor child's face and also stated that she had concerns about domestic violence in appellant's household. Ms. Van Fossen related an occasion where Mr. Beal threw a drill across the room when she suggested that he obtain employment and an occasion where Mr. Beal was speaking very harshly with appellant. Ms. Van Fossen explained that she had observed scratches on appellant's arm which appellant told her were inflicted by Mr. Beal.
Appellant also informed Ms. Van Fossen that Mr. Beal had a drinking problem and Ms. Van Fossen observed him drinking on two occasions while visiting their home. Ms. Van Fossen stated that since her marriage to Mr. Beal, appellant had become quiet and withdrawn, and was not as open or cooperative as she had been in the past. Ms. Van Fossen testified that she could not recommend that appellant be granted return custody of the minor child due to the current conditions in her life. Ms. Van Fossen further indicated that she did not believe that appellant's circumstances would change in the near future.
Anita Exley, Ph.D., the minor child's clinical psychologist from Community Mental Health Care, testified that she first saw the minor child in December of 1995 at the request of the foster mother, due to the minor child's extreme behavioral problems. It was indicated that the minor child was placed in therapeutic foster care in another county as a result of such behavioral problems. Dr. Exley explained that the minor child had been diagnosed as having a reactive attachment disorder of the disinhibitive type, along with attention deficit hyperactivity disorder. Dr. Exley stated that the minor child had related instances of inappropriate sexual contact by appellant and also, by a thirteen year old boy who was living in appellant's house. Dr. Exley concluded that she believed it was in the minor child's best interest for appellant's parental rights to be terminated.
Next, Karen Holmes, appellant's case manager, testified that she became familiar with this case in January of 1997 and was hopeful that reunification would take place until appellant discontinued taking her medications in April of 1997. Ms. Holmes stated that since she became appellant's case manager, the minor child had exercised weekly weekend visits with appellant, along with a ten-day visit at Easter. Such visits ceased as a result of appellant's failure to continue with counseling and failure to continue taking her medications in April of 1997. Ms. Holmes related that when appellant ceased taking her medications, she became very agitated and made violent statements during home visits, including throwing a mug at Mr. Beal's head.
Ms. Holmes testified that appellant's home would not be appropriate or safe for a child. Ms. Holmes explained that she discussed the case plan objectives and progress with appellant on every visit and had exercised home visits with appellant on at least six or seven occasions. Ms. Holmes stated that appellant's efforts to resolve current problems concerning the minor child declined since her marriage to Mr. Beal and that appellant had made little improvement in six months. Ms. Holmes concluded that appellant had failed to satisfactorily complete the case plan objectives; that appellant's circumstances would not likely change in the near future; and, that it would not be in the minor child's best interest to reside with appellant.
Roseanna Falcone, the guardian ad litem for the minor child, reported that appellant's home was unacceptable for a minor child. Ms. Falcone recommended that permanent custody of the minor child be granted to appellee as a result of appellant's inadequate housing, appellant's failure to continuously utilize her medications and appellant's exhibited behavior while without medications.
Appellant, herself, testified that weekend visits with the minor child had not gone very well. She admitted to yelling at the minor child when the child refused to listen to her. Appellant denied having any inappropriate sexual contact with the minor child, but conceded that during an incident when the child continued to stick her tongue out, she did bite the child's tongue. Appellant also admitted that certain scratches on her arm occurred when Mr. Beal was drunk and had grabbed her, causing her to pull away. Appellant explained that although she missed three parenting classes, she was not provided further information regarding how to make up those sessions.
Appellant stated that she independently discontinued seeing Stan Gornick, her counselor at Community Mental Heath Services. She testified that she has suffered from manic depression for many years and has attempted suicide on more than ten occasions, with the last such attempt being in 1996. Finally, appellant stated that she had two older children who were placed in the permanent custody of other individuals due to allegations of abuse or neglect.
Based upon the foregoing testimony, including that offered by appellant, it is clear that appellee committed reasonable efforts and resources to aid reunification with the minor child by attempting to eliminate the need for the minor child's permanent removal from appellant's home and by attempting to assist appellant in resolving the problems which initially led to the minor child's removal. The trial court had clear and convincing evidence before it to establish that appellee satisfied the reasonableness standard set forth in R.C. 2151.419 and that appellant continuously failed to substantially remedy the conditions which initially caused the minor child to be placed outside of the home in accordance with R.C. 2151.414(E).
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE COURT ERRED IN ADMITTING THE RESULTS OF A PREJUDICIAL URINALYSIS REPORT."
Ms. Thomas was permitted to testify, over appellant's objection, as to the results of a urinalysis test to which appellant voluntarily submitted after informing Ms. Thomas that she was "clean and sober." Appellant was required by the terms of her case plan to undergo drug and alcohol evaluation and counseling, and to follow the recommendations of her counselor. Ms. Thomas believed it would be in appellant's best interest, as well as her own, to be able to establish appellant's sobriety in court if called upon to do so. Ms. Thomas stated that she was responsible for drawing appellant's urine at her office on March 6, 1997. She was also responsible for shipping the urine sample to Excel Laboratories for testing and for receiving the test results, which then became a part of her records in this case.
Ms. Thomas explained that appellant denied marijuana usage and when the urinalysis test results revealed that a low level of cannabis was present, appellant surmised it could have been as a result of second-hand marijuana smoke to which she was exposed. Ms. Thomas stated that she did not know if such explanation was plausible, however, it is clear that such explanation was not discounted.
Appellant complains that Ms. Hart's testimony regarding her urinalysis test results was prejudicial, thereby affecting her substantial rights. Appellant submits that she was not privy to the urinalysis test results prior to the hearing on appellee's motion for permanent commitment. Appellant also avers that the urinalysis test report constituted hearsay and was not properly authenticated so as to qualify as a business record exception in accordance with Evid.R. 803 (6). Appellant concludes that the trial court expressly relied upon the urinalysis test report in reaching its decision, to her prejudice.
In conducting a thorough examination of the record in this case, it cannot be said that the trial court expressly relied upon the urinalysis test results in concluding that permanent commitment of the minor child should be granted to appellee. The trial court briefly and simply referred to the reported urinalysis results in its decision when summarizing the testimony offered at the hearing on appellee's motion. Given the magnitude of other testimony presented, including that offered by appellant, we cannot find that the urinalysis test report constituted a determining factor in the trial court's ultimate decision. Therefore, the error, if any, committed by the trial court in accepting testimony from Ms. Hart on the urinalysis test results, was harmless. (Civ.R. 61).
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "THE COURT ABRIDGED SUBSTANTIAL PARENTAL RIGHTS IN FAILING TO DETERMINE AND SET OUT THE BEST INTERESTS OF THE CHILD PURSUANT TO THE CRITERIA OF R.C. 2151.414(D)."
Appellant complains that the trial court completely failed to consider and determine the best interest of the minor child in accordance with R.C. 2151.414(D).
Appellant's claim that the only evidence offered concerning the minor child's adoptability indicated that there was no real chance of adoption, is not well-taken. The guardian ad litem
testified that appellant's case manager, Karen Holmes, had inquiries regarding the adoption of the minor child. Additionally, said guardian ad litem concluded that it would not be in the minor child's best interest to permanently return her to appellant. The minor child had remained in the placement of the same foster family, which was uniquely qualified to handle her behavioral problems, since 1997 and there was some indication that this family desired to adopt her. Furthermore, appellant's claim that her relationship with the minor child was good was contradicted by her own testimony wherein she stated that weekend visits with the minor child had not gone very well.
While a minor child's reunification with her natural parent would be the ideal result, it is clear that based upon the myriad of testimony presented in this case, appellant's own actions led to the trial court's conclusion that such reunification would not be in the minor child's best interest. The trial court explicitly stated in its decision, as previously set forth herein, that the minor child could not be placed with appellant and that granting permanent commitment to appellee was in the minor child's best interest.
The trial court was required to consider all relevant evidence, including but not limited to those factors enumerated in R.C.2151.414(D)(1) through (D)(5). It is clear to this court that contrary to appellant's contentions, the trial court considered and applied those factors in R.C. 2151.414(D) to the facts presented in the case at bar. (See Decision filed July 21, 1997, 7-8). Our review of the record reveals substantial evidence to support the trial court's findings and conclusion.
Appellant's third assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, J.,
Waite, J.,
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE